IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN FUNARO and | ) | |
| SHARON FUNARO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-04 |
| | ) | |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY | ) | |
| and T.J. ORTMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**

## I.  <u>INTRODUCTION</u>

This action, stemming from a dispute over an insurance claim, is brought by Plaintiffs Stephen Funaro and Sharon Funaro, husband and wife, (collectively, "Plaintiffs") against their insurer, Defendant State Farm Fire and Casualty Company ("State Farm") and T.J. Ortman ("Ortman"), an adjuster who handled Plaintiffs' insurance claim on behalf of State Farm.  Plaintiffs commenced this action in the Court of Common Pleas of Allegheny County, Pennsylvania, at case number GD-24-014266, alleging claims for breach of the insurance contract, tortious interference with contract, and statutory bad faith, and seeking to compel an appraisal, all under Pennsylvania law.  State Farm removed the case to this Court in accordance with the procedures authorized by 28 U.S.C. §§ 1332, 1441, and 1446, arguing that this Court has subject matter jurisdiction over Plaintiffs' state law claims based on the diversity of citizenship of the parties.  (Docket No. 1).  In removing the case, State Farm asserted that, to the extent Ortman's consent to removal is required, he joined in and consented to the removal of this case.  (*Id.* at 1 n.1).

State Farm has filed a Motion to Dismiss Plaintiffs' Complaint in part, pursuant to Federal

Rule of Civil Procedure 12(b)(6), (Docket No. 7), and Plaintiffs have filed a Motion to Remand to State Court, (Docket No. 12). The parties have also filed briefs supporting their own motions and opposing the other parties' motions. (Docket Nos. 8, 13, 15, 16, 17). For the reasons set forth below, Plaintiffs' Motion to Remand will be denied, and State Farm's Motion to Dismiss will be granted.

## II. BACKGROUND

The Court will present here an abbreviated version of the facts as they are alleged in Plaintiffs' Complaint. (Docket No. 1-2). Plaintiffs are citizens of Pennsylvania who reside in Honesdale, Pennsylvania. (*Id.* ¶¶ 1, 2). State Farm is an insurance company headquartered in Bloomington, Illinois. (*Id.* ¶ 3). Ortman is a citizen of Pennsylvania whose place of business is believed to be in Philadelphia, Pennsylvania. (*Id.* ¶ 4).

Plaintiffs own a farm in Honesdale, on which sits a large barn that exceeds one hundred feet in length. (Docket No. 1-2, ¶ 6). Plaintiffs insured their farm and the buildings thereon through a policy with State Farm (hereinafter, the "Policy"). (*Id.* ¶ 7). Although Plaintiffs aver in their Complaint that they did not have in their possession a copy of the Policy, State Farm indicates that a copy of said Policy is attached to its brief in support of its motion to dismiss. (Docket Nos. 1-2, ¶ 18; 8 at 2; 8-1).[1] On January 10, 2021, a large portion of Plaintiffs' barn roof collapsed from the weight of snow, causing – through the collapse itself as well as through exposure to the elements – damage to the structure of the barn itself and the contents of the barn (including a custom French stove that Plaintiffs allege was worth approximately between $90,000 and

---

[1] The Court notes that Plaintiffs do not clearly dispute the authenticity of the Policy. Therefore, since Plaintiffs' claims are necessarily predicated on the contractual relationship between Plaintiffs and State Farm, the Court is permitted to rely upon the terms and conditions of the Policy in ruling on a motion to dismiss. *See Reginella Constr. Co. v. Travelers Cas. & Sur. Co. of Am.*, 568 F. App'x 174, 177 n.5 (3d Cir. 2014) ("A court, however, may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based upon that document." (internal quotation marks and citation omitted)).

$100,000).  (Docket No. 1-2, ¶¶ 8, 9).

Plaintiffs allege that based on the collapse of the barn roof, they made a claim to State Farm for insurance benefits under the Policy, and State Farm assigned that claim to Ortman.  (Docket No. 1-2, ¶ 10).  According to the Complaint, State Farm accepted liability for Plaintiffs' claim.  (*Id.* ¶ 11).  Plaintiffs obtained an initial estimate of $65,000 to repair the barn, in response to which State Farm tendered Plaintiffs approximately $40,000 in insurance benefits.  (*Id.* ¶ 12).  After the contractor who had provided such estimate failed to commence the repair work, however, Plaintiffs consulted with another contractor who informed Plaintiffs that it would cost approximately $225,000 to repair the barn.  (*Id.* ¶¶ 13, 14).  Plaintiffs thereafter sought additional insurance benefits from State Farm, but State Farm refused Plaintiffs' demand.  (*Id.* ¶¶ 15, 16).  Plaintiffs retained a public adjuster, who requested a copy of the Policy from State Farm, but State Farm did not provide it.  (*Id.* ¶ 17).  Plaintiffs, through their public adjuster, then requested appraisal on the issue of repairing the barn.  (*Id.* ¶ 19).

Ortman refused to agree to appraisal as provided for in the Policy, representing to Plaintiffs and their adjuster that State Farm was not obligated to undertake appraisal because more than one year had passed since the date of loss.  (Docket No. 1-2, ¶¶ 20, 21).  Plaintiffs "believe and therefore aver that defendants were referring to a limitation of suit provision, standard in policies issued by State Farm," that provides as follows:

> Suit Against Us.  No action will be brought against us unless there has been full compliance with all of the policy provisions.  Any action by any party must be started within one year after the date of loss or damage.

(*Id.* ¶ 22).

Plaintiffs further allege that State Farm continued to administer their claim through at least May, 2024 (and possibly as late as September, 2024), noting that State Farm issued an additional

payment of $35,000 on the claim on or around May 28, 2024, after performing an evaluation of the French stove.  (Docket No. 1-2, ¶¶ 25-27).  Plaintiffs aver that, as to their claim for damages to the barn itself, however, State Farm's most recent payment was made on or around December 6, 2023.  (*Id.* ¶ 26 n.2).

Plaintiffs also allege that in 2024 the parties had the French stove evaluated.  (Docket No. 1-2, ¶ 35).  The stove was evaluated as being worth approximately $65,000 plus a $5,000 delivery fee, and as noted previously, State Farm thereafter issued a $35,000 payment to Plaintiffs for the stove.  (*Id.* ¶¶ 36, 39).  On or around September 23, 2024, Ortman informed Plaintiffs' public adjuster that he had found two eBay links selling the same brand of French stove for $35,000.  (*Id.* ¶ 41).  Plaintiffs' public adjuster requested that Ortman provide him with copies of the links so that he could evaluate them, but Ortman never did so.  (*Id.* ¶¶ 42, 43).

Plaintiffs further allege that, in the course of handling their claim, Ortman interfered with and obstructed Plaintiffs' efforts to obtain insurance benefits from State Farm in a number of ways, including by:  declining to order appraisal of the damage under the Policy; falsely telling Plaintiffs that they were not entitled to benefits for contents of the barn; falsely telling Plaintiffs that they could only recover for contents of the barn that were directly underneath the portion of the roof that had collapsed and that were physically damaged by same (rather than from exposure to the elements); falsely telling Plaintiffs that they could not recover benefits on the French stove because they had received it as a gift; and refusing to provide Plaintiffs' public adjuster with links showing evaluation of the French stove.  (Docket No. 1-2, ¶¶ 28-33, 42-43).

As noted, *supra*, the Complaint asserts four Counts brought under Pennsylvania law: (I) Specific Performance – Compelling Appraisal (against State Farm only); (II) Bad Faith Insurance Practices under 42 Pa. Cons. Stat. § 8371 (against both State Farm and Ortman);

(III) Breach of Contract (against State Farm only); and (IV) Tortious Interference with Insurance Contract (against Ortman only). After Plaintiffs commenced this action in the Court of Common Pleas of Allegheny County, Pennsylvania, State Farm removed the case, arguing that this Court has original jurisdiction over Plaintiffs' state law claims because of the diversity of citizenship of the parties. (Docket No. 1).

Presently before the Court are two motions filed by the parties. State Farm has filed a Motion to Dismiss Plaintiff's Complaint in part, arguing that Counts I, II (against Ortman only), III, and IV should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[2] State Farm asserts that Plaintiffs' claims against Ortman are frivolous and unsupported by law, and that Ortman was fraudulently joined as a defendant in this case to defeat this Court's diversity jurisdiction. (Docket No. 1). Plaintiffs have filed a Motion to Remand this case back to the Pennsylvania Court of Common Pleas, arguing that this Court does not have jurisdiction over this matter because diversity of citizenship does not exist here among the parties.

## III.  STANDARDS OF REVIEW

### A.  Removal  of Cases from State Court

The removal of cases from state court is governed by 28 U.S.C. § 1441, which provides, in relevant part that "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). To remove a case from state court to federal district court, a defendant must set forth the grounds for removal in a short, plain statement in accordance with Rule 8. *See* 28 U.S.C. § 1446; *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574

---

[2]    State Farm's motion to dismiss does not seek dismissal of the statutory bad faith claim alleged against it at Count II.

U.S. 81, 87 (2014).

The Court of Appeals for the Third Circuit has held that "[i]t is settled that the removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir. 1987) (footnote omitted). Moreover, a court "must focus on the plaintiff's complaint at the time the petition for removal was filed," and "[i]t remains the defendant's burden to show the existence and continuance of federal jurisdiction." *Id.*

**B.  Motions to Dismiss Pursuant to Rule 12(b)(6)**

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (additional internal quotation marks and citation omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See id.* (citing *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## IV.   **DISCUSSION**

### A.   **Plaintiff's Motion to Remand**

In its Notice of Removal, (Docket No. 1), State Farm asserts that this Court has original jurisdiction over Plaintiffs' claims against it pursuant to 28 U.S.C. § 1332(a), which provides, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States." The Third Circuit set forth, in *Abels v. State Farm Fire & Casualty Co.*, the

following guidelines regarding the removal of cases to federal court:

> We are mindful of a number of general principles that should guide the exercise of the federal courts' removal jurisdiction. Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand. 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3642, at 149 (2d ed. 1985) [hereinafter cited as *Federal Practice* ]; *Wood v. Home Insurance Company,* 305 F. Supp. 937, 938 (C.D. Cal. 1969). The defendant's right to remove is to be determined according to the plaintiffs' pleading at the time of the petition for removal, and it is the defendant's burden to show the existence of federal jurisdiction. *Pullman Company v. Jenkins,* 305 U.S. 534, 537, 540, 59 S. Ct. 347, 348, 350, 83 L. Ed. 334 (1939). **In determining whether diversity jurisdiction exists, the citizenship of purely "nominal" parties may be disregarded.** 13B *Federal Practice* § 3606, at 409 (2d ed. 1984).

770 F.2d 26, 29 (3d Cir. 1985) (emphasis added).

As noted, *supra*, in removing the case to this Court, State Farm asserts that Plaintiffs fraudulently joined Ortman as a defendant in this action – as the claims against him are frivolous – contending Ortman's citizenship is irrelevant for determining whether diversity exists among the parties.  In determining whether a party has been fraudulently joined for the purpose of avoiding federal court jurisdiction, the Third Circuit instructed in *Batoff v. State Farm Insurance Co.,* 977 F.2d 848 (3d Cir. 1992), that joinder is fraudulent if "'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment.'" *Id.* at 851 (quoting *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied,* 498 U.S. 1085 (1991); and *Abels,* 770 F.2d at 32).  Further, the Third Circuit emphasized in *Batoff* that "'where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined *based on its view of the merits of those claims or defenses*.'" *Id*. (quoting *Boyer*, 913 F.2d at 113 (emphasis added)).

The Third Circuit in *Batoff* also explicitly rejected the approach requiring that fraudulent

joinder be based on the existence of a claim that would not survive a motion to dismiss. *See id.* at 852. Instead, the Third Circuit cited its earlier opinion in *Lunderstadt v. Colafella*, 885 F.2d 66 (3d Cir. 1989), and explained that the appropriate inquiry is whether the claim against the non-diverse defendant is not "'wholly insubstantial and frivolous,'" a threshold to withstand a motion to dismiss under Rule 12(b)(1) (lack of jurisdiction) that is lower than that required to withstand a Rule 12(b)(6) motion. *Batoff*, 977 F.2d at 852 (quoting *Lunderstadt*, 885 F.2d at 70); *see also Greco v. Beccia*, No. 99-CV-2136, 2001 WL 121887, at *5 (M.D. Pa. Feb. 13, 2001) (discussing these cases and the appropriate standard). Thus, "the removing party carries a heavy burden of persuasion in making this showing." *Batoff*, 977 F.2d at 851 (internal quotation marks and citation omitted). The Third Circuit justified such an approach, noting that "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Id.* (internal quotation marks and citation omitted).

In their Motion to Remand, Plaintiffs argue that, contrary to State Farm's representations in its Notice of Removal, this Court lacks subject matter jurisdiction over this matter, so the case should be remanded to state court for further proceedings. Plaintiffs contend that State Farm improperly removed this case to federal court, based on its meritless contention that Ortman was fraudulently joined as a defendant to defeat diversity jurisdiction because the claims alleged against him are frivolous. Plaintiffs argue that their tortious interference claim against Ortman is meritorious and not frivolous and, therefore, since Ortman and Plaintiffs are Pennsylvania residents, diversity of citizenship does not exist here and the case should be remanded back to state court.

The Court first notes that, in moving to remand, Plaintiffs appear to concede their statutory claim against Ortman at Count II, and thus they rely only on the colorability of their claim of

tortious interference against Ortman at Count IV.  (Docket Nos. 13, 15).  Additionally, in opposing Plaintiffs' motion to remand, State Farm does not argue that Plaintiffs do not plan to prosecute the action against Ortman; they contend only that Plaintiffs do not allege a colorable tortious interference claim against Ortman.  Accordingly, in ruling on Plaintiffs' motion, the Court considers herein whether Plaintiffs' tortious interference claim against Ortman is wholly insubstantial and frivolous, such that his joinder as a defendant in this case should be deemed fraudulent.

To prevail on a claim for tortious interference with an existing contractual relation under Pennsylvania law, a plaintiff must plead and prove the following elements:

> "(1) The existence of a contractual . . . relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing contractual relation . . . ; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct."

*Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (quoting *Strickland v. University of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)).

One of the essential elements of tortious interference is the existence of a contract between the plaintiff and a third person other than the defendant.  *See Daniel Adams Assocs., Inc. v. Rimbach Pub., Inc.*, 519 A.2d 997, 1000 (Pa. Super. Ct. 1987).  Additionally, because the acts of an agent within the scope of his agency are imputed to and binding on a corporation, an agent of a corporation has a qualified privilege from liability for a claim of tortious interference with a contract between his principal and a third party.  *See CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 385 (3d Cir. 2004); *Daniel Adams*, 519 A.2d at 1000-02. Otherwise, "holding an agent liable would be like holding the principal itself liable for the tort of interfering with its own contract, instead of holding the principal liable for breach of contract."

*CGB Occupational Therapy*, 357 F.3d at 385; *see Daniel Adams*, 519 A.2d at 1002.  Nevertheless, an agent can qualify as a third party if his acts fall outside the scope of his employment.  *See Whaumbush v. City of Phila.*, 747 F. Supp. 2d 505, 513 (E.D. Pa. 2010).

In support of their Motion to Remand, Plaintiffs assert generally that where an adjuster behaves egregiously, and where the adjuster and insurer are separate entities, the adjuster may be sued for tortious interference with an insurance contract under Pennsylvania law.  Plaintiffs initially contend that it is unclear whether Ortman was an employee of State Farm, so it is not clear whether Ortman and State Farm are separate entities.  Plaintiffs also contend that "other courts in this district have permitted claims for tortious interference with contract to proceed against adjusters where the adjuster and insurer are not within the same legal entity and the adjuster's conduct was egregious."  (Docket No. 13 at 1).

However, in support of this argument, Plaintiffs errantly cite to *DeAngelis v. Encompass Home & Auto Insurance Co.*, Civ. Action No. 21-2577, 2022 WL 118222 (E.D. Pa. Jan. 12, 2022), a case in the U.S. District Court for the Eastern District of Pennsylvania finding that an insured's tortious interference claim could proceed against an independent third-party *appraiser* – not a claims *adjuster* acting on behalf of the insurer.  As State Farm points out, in *DeAngelis* the appraiser who was sued (along with the insurance company) was named by the insurer under the policy's appraisal provision, which permitted each party to "select a competent and disinterested appraiser."  *Id.* at *1.  In that case, the plaintiffs brought tort claims against their insurer and the appraiser, including a claim against the appraiser for intentional interference with contractual relations under Pennsylvania law.  *See id.* at *5-6.  On a motion to dismiss, the district court noted that the *DeAngelis* plaintiffs did not allege that an *adjuster* had only investigated and opined on a claim and reached an incorrect result.  *See id.* at *6.  Rather, the *DeAngelis* court indicated that the

plaintiffs in that case alleged that the *appraiser*, who had an obligation pursuant to the appraisal provision in the policy to act in a disinterested manner, had accepted direction from the insurer and refused to properly appraise the claim in an unbiased manner, and acted willfully and unjustifiably in restricting the plaintiffs' rights. *See id.* The *DeAngelis* court therefore concluded that, although the complaint was short on details, the plaintiffs' allegations were sufficient to state a cognizable claim against the independent appraiser for tortious interference at that early stage of the proceedings, so the defendant's motion to dismiss such claim was denied.[3] *See id.* at *7.

The distinction between a tortious interference claim brought against an insurance company's claims adjuster, as opposed to such claim brought against an independent appraiser, is particularly relevant here because – as State Farm points out – Plaintiffs themselves aver in the Complaint that State Farm assigned their claim to Ortman, and throughout the Complaint Plaintiffs allege facts indicating that Ortman handled their claim on behalf of State Farm, or as its agent. Additionally, in briefing, both parties discuss Ortman's role as an *adjuster* for State Farm, not as an independent appraiser. Accordingly, the Court does not find that Ortman – who Plaintiffs appear to concede acted in his capacity as an adjuster in handling their insurance claim for State Farm – was thereby acting as an entity separate from State Farm.

Even assuming that Ortman, working as an adjuster, was an agent of State Farm, Plaintiffs also argue that their tortious interference claim against Ortman is not frivolous because they are alleging particularly egregious behavior on his part. In so arguing, Plaintiffs appear to contend that Ortman's conduct alleged in the Complaint occurred outside of his agency relationship with State Farm. Without further elaborating, Plaintiffs cite to *Kennedy v. Allstate Property & Casualty*

---

[3]    In so finding, the *DeAngelis* court also noted that the case was distinguishable from *Steven J., Inc. ex rel. Fenton v. Landmark American Insurance Co.*, Civ. Action No. 1:14-CV-0474, 2014 WL 4672498 (M.D. Pa. Sept. 18, 2014), a case that involved allegations that were less egregious than those presented there, and on which State Farm relies, as discussed, *infra*.

*Insurance Co.*, Civ. Action No. 15-2221, 2015 WL 4111816 (E.D. Pa. July 8, 2015), in support of their contention.  In *Kennedy*, the plaintiff insureds brought various state law claims against their insurance company and several adjusters, alleging that the adjusters affirmatively misrepresented and concealed material facts from them in order to delay the resolution of their claims.  *See id.* at *1.  The specific conduct alleged by the *Kennedy* plaintiffs included averments that the adjusters sent them numerous letters over a period of years regarding the status of the investigation, falsely stating that the investigation into their claims was ongoing, the purpose of which was to induce a lower settlement by causing the plaintiffs to suffer increasing financial hardship from the lack of payment under their insurance policy.  *See id.*  Importantly, the claim under Pennsylvania law that was at issue in *Kennedy*, however, was negligence – not tortious interference with a contract.  *See id.* at *2-3.  Like this case, the *Kennedy* defendants removed the case to federal court, arguing that the adjuster defendants had been fraudulently joined in order to defeat federal diversity jurisdiction, and the plaintiffs moved to remand.  *See id.* at *2.  Unlike this case, however, the parties in *Kennedy* disputed whether a claims adjuster owed a duty of care to an insured so as to support a negligence claim, and the Court concluded that Pennsylvania law is silent on the question of whether there is a cause of action for negligence against an insurance adjuster arising from the adjuster's handling of an insurance claim on behalf of an insurer.  *See id.*  at *3.  The *Kennedy* court decided that since there was no Pennsylvania law on the issue, the defendants had not met their burden of showing the claim was "wholly insubstantial or frivolous," and the case had to be remanded to state court because there was "at least a colorable claim for negligence against adjuster defendants under Pennsylvania law."  *Id.* at *4.

Here, in contrast, State Farm argues that Pennsylvania law is not silent on the issue of whether the actions of a claims adjuster are redressable under a theory of tortious interference with

an underlying insurance agreement.  In opposing Plaintiffs' Motion to Remand, State Farm argues

that, based on the allegations in the Complaint, Ortman was acting as an agent for State Farm in

handling Plaintiffs' claim, so under Pennsylvania law Ortman could not tortiously interfere with

his principal's contract (the Policy).  Accordingly, State Farm contends that Plaintiffs' tortious

interference claim against Ortman is implausible and therefore frivolous.  In support of this

argument, State Farm cites to *Steven J., Inc. ex rel. Fenton v. Landmark American Insurance Co.*,

Civ. Action No. 1:14-CV-0474, 2014 WL 4672498 (M.D. Pa. Sept. 18, 2014).  On a motion to

dismiss in that case, the court rejected a policyholder's attempt to bring a tortious interference

claim against an insurance adjuster.  *See id.* at \*1.  The adjuster defendant argued that the plaintiffs'

complaint alleged only a dispute regarding the correctness of the adjuster's resolution of his claim,

and not the intentional, purposeful, harmful conduct required to state a claim for tortious

interference with an existing contractual relation under Pennsylvania law.  *See id.* at \*4.  The

adjuster defendant in *Steven J.* also argued that the plaintiffs in that case failed to allege a tortious

interference claim because they failed to show the absence of privilege or justification on the part

of the defendant, since the adjuster defendant had contractually agreed to review an insurance

claim as an insurance adjuster.  *See id.*

　　The *Steven J.* court remarked that other federal courts construing such claims frequently

rejected them since the alleged conduct was not tortious when the adjuster's job is to investigate

and report to the insurance company on the cause of loss, noting that such task, "which the adjuster

is itself contractually obligated to undertake, may on occasion lead to results which the insured

believes are misguided, uninformed and wrong."  *Id.*  The *Steven J.* court concluded that, in such

instances, the insured could pursue relief through litigation under the insurance policy itself.  *See*

*id.*  However, the court concluded that "in the absence of further, significant well-pleaded facts

detailing some other *purposeful misconduct by the adjuster which falls outside its privileged contractual relationship with the insurance company*, the actions of the adjuster recommending denial of the claim, standing alone, does not constitute the tort of intentional interference with a contractual relationship." *Id.* (emphasis added). The court therefore dismissed the tortious interference claim since the plaintiff had not pled facts that would establish purposeful misconduct not privileged or otherwise justified in the insurance claims adjustment context. *See id.* Similarly, here too, State Farm argues that Plaintiffs have failed to allege conduct by Ortman that falls outside the routine claim adjustment process.

Upon consideration of the parties' arguments, the Court agrees that, "[o]rdinarily, the actions of a claims adjuster are not redressable" under a theory of tortious interference with the underlying insurance policy. *See Hartford Steam Boiler Inspection v. International Glass Prods., LLC*, No. 2:08cv1564, 2016 WL 5468111, at *32 (W.D. Pa. Sept. 29, 2016) (citing *Steven J.*, 2014 WL 4672498, at *4). However, the Court also agrees that such a claim against an adjuster is possibly colorable if a plaintiff has pled allegations supporting an inference that the adjuster acted outside the scope of his agency. *See id.* at *33 (in which the court held that the plaintiff had alleged actions that would fall outside of the usual claims adjustment process). Here, Plaintiffs have not alleged facts indicating that Ortman acted outside the scope of his agency relationship with State Farm in some way, *i.e.,* by dictating the outcome of important discretionary decisions and placing his own financial interests ahead of his obligations, or by engaging in some sort of fraud. *See id.* at *9. Essentially, the Complaint alleges a series of erroneous statements made by Ortman in the course of handling Plaintiffs' claim. Specifically, as previously noted, Plaintiffs allege that in communications regarding their insurance claim, Ortman took the following actions: he declined to order an appraisal because over one year had passed since the damage had occurred; he falsely

told Plaintiffs that they could not recover for the contents of the barn, for the contents of the barn that were not directly underneath the portion of the roof that had collapsed, and for the French stove because it was a gift; and he did not provide the Plaintiffs' public adjuster with links showing evaluation of their French stove. Plaintiffs thus allege a number of false statements that Ortman made to them regarding their policy's coverage, and they allege that Ortman failed to accede to several of their demands under the Policy, all actions that were allegedly taken to prevent Plaintiffs from receiving payment due to them under the Policy. While such allegations may involve false, erroneous, or misguided statements or the failure to agree to requests, the Court finds that such allegations do not, however, support an inference that Ortman thereby acted outside the agency relationship or engaged in conduct for his own benefit and not that of State Farm.

Upon consideration of the objective criteria that there be some reasonable basis in fact and some colorable legal ground supporting a tortious interference claim against Ortman, the Court finds that there is no question that Pennsylvania law does not afford insured plaintiffs this cause of action against an agent of an insurance company under circumstances such as those alleged here. The Court finds no authority supporting the possibility of such a cause of action. There is no "colorable" legal basis for such claim against Ortman under the facts alleged. Therefore, the Court finds that Plaintiff's tortious interference claim against Ortman is frivolous, and thus that Ortman was fraudulently joined as a defendant in this matter.

Accordingly, even though Ortman and Plaintiffs are citizens of Pennsylvania, Ortman is not an essential defendant in this case, so diversity of citizenship does exist here. The Court therefore has subject matter jurisdiction over this matter, and Plaintiffs' motion to remand this case to state court will be denied.

**B. <u>State Farm's Motion to Dismiss Plaintiffs' Complaint in Part, Pursuant to Rule 12(b)(6)</u>**

### 1. <u>Count II:  Statutory Bad Faith</u>

Turning now to State Farm's Motion to Dismiss, Count II of Plaintiffs' Complaint alleges a statutory bad faith claim against both State Farm and Ortman.  (Docket No. 1-2 at 9-10).  State Farm argues that, to the extent Plaintiffs bring that claim against Ortman, the claim fails as a matter of law because Ortman is not an "insurer."   In responding to State Farm's motion to dismiss, Plaintiffs do not dispute this argument, and they instead appear to concede dismissal of this claim against Ortman.  Additionally, the Court agrees that the plain language of 42 Pa. Cons. Stat. § 8371 makes clear that only an insurer, not an insurance adjuster, can be held liable under Pennsylvania's insurance bad faith statute.  *See, e.g., Alexander v. Mid-Century Ins. Co.*, Civ. Action No. 2:21-cv-392, 2021 WL 3173621, at *4 (W.D. Pa. July 26, 2021) (holding that "[t]he Pennsylvania Superior Court has confirmed that under 42 Pa. C.S. § 8371, a statutory action for bad faith can only be brought against the insurer" (internal quotation marks and citation omitted)).  Accordingly, Plaintiffs' statutory bad faith claim against Ortman at Count II will be dismissed, with prejudice.

### 2. <u>Count IV:  Tortious Interference</u>

As discussed in relation to Plaintiffs' Motion to Remand, *supra*, Plaintiffs allege a claim of tortious interference with contract against Ortman at Count IV of the Complaint.  (Docket No. 1-2 at 11).  For the same reasons as those set forth above (in finding Plaintiff's tortious interference with contract claim to be frivolous) – including the Court's conclusion that there is no colorable legal basis for a tortious interference with contract claim against Ortman – Plaintiffs have also failed to state a claim for tortious interference with contract upon which relief can be granted, pursuant to Rule 12(b)(6).  More specifically, Plaintiffs have not alleged facts showing that Ortman was acting as an entity separate from State Farm, nor – assuming that Ortman was acting as an

agent of State Farm – have Plaintiffs alleged facts showing that Ortman's actions were taken outside the scope of his agency relationship with State Farm in some way. Therefore, Plaintiffs' claim for tortious interference with contract at Count IV will be dismissed. As allowing amendment of this claim would be futile, such dismissal will be with prejudice. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (listing futility among the grounds that could justify a denial of leave to amend, along with undue delay, bad faith, dilatory motive, and prejudice (citing *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997))).

### 3. <u>Count I: Specific Performance Compelling Appraisal, and Count III: Breach of Contract</u>

In Count I of their Complaint, Plaintiffs seek specific performance, asking the Court to compel State Farm to participate in the appraisal process provided under the terms of the Policy, since State Farm has accepted the loss but has not tendered an appropriate amount for repairs to the barn, and since the parties disagree on the amount of the loss due to the barn's collapse. (Docket No. 1-2 at 8-9). Separately, in Count III, Plaintiffs aver that State Farm's refusal to pay them the appropriate amount of insurance benefits to which they are entitled constitutes breach of contract. (*Id.* at 10). In moving to dismiss both Counts, State Farm first argues that the request for specific performance of obligations under the Policy is not an independent cause of action, but rather is an equitable remedy for breach of contract (here, breach of Plaintiffs' rights under the terms of the Policy). State Farm therefore contends that Plaintiffs' request for specific performance at Count I should be construed as a prayer for relief in connection with their breach of contract claim at Count III, and should be denied along with the breach of contract claim. *See Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 99 (3d Cir. 2011) (stating that the district court was correct in pointing out that, "without a contract, there can be no claim for specific performance, which is an equitable remedy for breach of contract").

18

State Farm further argues that Plaintiffs' claim for breach of contract at Count III should be dismissed because it is time-barred. Under Pennsylvania law, generally, a breach of contract claim must be brought within four years. *See* 42 Pa. Cons. Stat. § 5525. Parties to an agreement may, however, contractually shorten the statute of limitations if the modification is reasonable. Specifically, Pennsylvania law provides that:

> An action, proceeding or appeal must be commenced within the time specified in or pursuant to this chapter unless, in the case of a civil action or proceeding, a different time is provided by this title or another statute or a shorter time which is not manifestly unreasonable is prescribed by written agreement.

42 Pa. Cons. Stat. § 5501(a).

In applying this statute, both federal and state courts in Pennsylvania have held that contractual limitations periods of one year are reasonable in insurance contracts. *See, e.g., Atiyeh v. National Fire Ins. Co. of Hartford*, Civ. A. No. 07-cv-4798, 2008 WL 4444253, at *4-5 (E.D. Pa. Sept. 30, 2008) (noting that courts in Pennsylvania have held one- and two-year suit-limitation clauses to be valid and reasonable); *McElhiney v. Allstate Ins. Co.*, 33 F. Supp. 2d 405, 406 (E.D. Pa. 1999) (finding a one-year time limit to be reasonable); *Hospital Support Servs., Ltd. v. Lumbermens Mut. Cas. Co.*, CIV. A. No. 88-2963, 1989 WL 32771, at *4 (E.D. Pa. Apr. 3, 1989) (no evidence of overreaching in including a 12-month limitation clause); *Lardas v. Underwriters Ins. Co.*, 231 A.2d 740, 741 (Pa. 1967) (noting that a 12-month suit limitation period was reasonable and had long been recognized). Moreover, federal district court judges in this district have found one-year suit limitations clauses within State Farm's Homeowner's Policies to be reasonable. *See Gowton v. State Farm Fire & Cas. Co.*, Civ. Action No. 15-1164, 2016 WL 3539138, at *2 (W.D. Pa. June 29, 2016); *Palmisano v. State Farm Fire & Cas. Co.*, Civ. Action No. 12-886, 2012 WL 3595276, at *11 (W.D. Pa. Aug. 20, 2012).

As Plaintiffs indicate in their Complaint, the Policy here, upon which Plaintiffs' breach of

contract claim is based, contains the following provision (referred to herein as the "Suit Against Us" provision):

> **Suit Against Us.**  No action will be brought against us unless there has been full compliance with all of the policy provisions.  Any action by any party must be started within one year after the date of loss or damage.

(Docket No. 8-1 at 27; *see* Docket No. 1-2, ¶ 22).  In their Complaint, Plaintiffs also allege that the loss at issue here occurred on January 10, 2021.  (Docket No. 1-2, ¶ 8).  State Farm argues that, under the terms of the Policy, any suit related to Plaintiffs' loss had to be initiated within the following year, or by January 10, 2022.  However, Plaintiffs' Complaint in this matter was not filed until December 3, 2024, nearly four years after their loss occurred.  (Docket No. 1 at 1).  State Farm asserts that Plaintiffs' breach of contract claim against State Farm, and Plaintiffs' associated request that the Court compel State Farm's participation in appraisal under the terms of the Policy, are therefore time-barred by the terms of their contract.

In response, Plaintiffs make the following arguments:  (1) that State Farm's motion is procedurally improper because the Court should consider evidence of State Farm's conduct and how it may have contributed to delay in bringing suit, which should not be decided on a motion to dismiss; (2) that requesting appraisal under the Policy's appraisal clause is distinct from filing suit, so the one-year time limit in the Policy does not apply to Plaintiff's request for appraisal, and the specific performance Count should not be dismissed; (3) that the limitation of suit provision is tolled pending State Farms' performance of its duties under the Policy; (4) that, to the extent the "Suit Against Us" provision precludes Plaintiffs from enforcing the appraisal clause in the Policy, the provision is unconscionable; and (5) that, regardless of these arguments, Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, provides an independent means of enforcing the appraisal process.  (Docket No. 15).

*a. Whether raising the statute of limitations is procedurally improper*

First, as to whether raising the issue of statute of limitations is procedurally proper at this juncture in a motion to dismiss, in opposing State Farm's motion, Plaintiffs concede that a statute of limitations defense is properly raised at the pleading stage when the time bar is evident on the face of the complaint. Docket No. 15 at 4 (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). Here, the time bar is plainly evident because the Complaint alleges that: the Policy contained a one-year limitation clause that was triggered on the date of the loss; the loss occurred here on January 10, 2021; and this lawsuit was initiated on December 3, 2024. Therefore, the statute of limitations issue is properly raised in State Farm's motion to dismiss.

*b. Whether, under the terms of the Policy, requesting appraisal is distinct from filing suit*

Second, Plaintiffs argue that requesting appraisal under the Policy's appraisal clause is distinct from bringing claims in a lawsuit, so the one-year time limit in the Suit Against Us provision does not apply to their request that the Court compel State Farm to participate in the Policy's appraisal process. The Court does not necessarily disagree with Plaintiffs' contention that the appraisal clause was not governed by the Suit Against Us provision, such that Plaintiffs were not barred from seeking to invoke that appraisal clause after one year had passed. *See, e.g., Costello v. State Farm Fire & Cas. Co.*, Civ. Action No. 23-5088, 2024 WL 1520567, at *6 (E.D. Pa. Apr. 8, 2024) (finding that the plaintiffs were not barred from invoking the policy's appraisal clause, despite the one-year limitation of suit provision in the policy). However, to the extent Plaintiffs' request (at Count I) that the Court *compel* State Farm to participate in the appraisal process outlined in the Policy, the Court finds that such request for specific performance seeks to enforce Plaintiffs' rights under the Policy and may also constitute an equitable remedy request related to Plaintiffs' claim for breach of contract (at Count III, alleging that State Farm refused to

pay the appropriate amount of insurance benefits under the Policy).  *See id.* at *4.  Further, as indicated, *supra*, the breach of contract claim alleged in this lawsuit is subject to the one-year limitation provision.  Accordingly, since the request for specific performance of the appraisal clause arises from Plaintiffs' attempt to enforce their rights under the Policy by way of the instant civil action, and may constitute a remedy for the breach of contract claim, claims which are now time-barred by the one-year Suit Against Us provision, Count I will be dismissed.

### c. *Whether the statute of limitations period is tolled*

Third, as to whether the limitation period is tolled pending State Farm's performance of its duties under the Policy, Plaintiffs appear to argue that State Farm should be estopped from relying on the Suit Against Us provision in the Policy because State Farm's conduct delayed Plaintiffs from bringing suit against State Farm until after the one-year limitation period had expired.  However, "[e]stoppel requires an affirmative act by the insurer by which the insured was misled and prejudiced."  *Costello*, 2024 WL 1520567, at *4 (internal quotation marks and citation omitted).  Furthermore, it is the delinquent plaintiff who has the burden of showing that estoppel is appropriate.  *See id.* (citing *Evans Products Co. v. West Am. Ins. Co.*, 736 F.2d 920, 927 (3d Cir. 1984) (internal citations omitted)).

Here, Plaintiffs have not alleged facts in the Complaint to support their estoppel argument. Rather, Plaintiffs' allegations indicate that State Farm acknowledged and investigated Plaintiffs' claim, determined that the claim was covered under the Policy, and tendered an amount of benefits to Plaintiffs under the Policy.  Plaintiffs do not allege that State Farm acted in an untimely manner in acting thusly, nor do they allege that State Farm acted in any way to prevent them from filing suit against State Farm, nor do they allege that State Farm misled them in some way that would have prevented them from filing suit.  Furthermore, although Plaintiffs suggest in their opposition

brief that State Farm refused to submit to an appraisal process as part of handling the underlying insurance claim, from the allegations in the Complaint it appears that Plaintiffs' delay in requesting an appraisal was caused by Plaintiffs' own contractor's delays, rather than by conduct of State Farm.  (Docket No. 1-2, ¶¶ 12-15).  The Court therefore does not find that estoppel applies here, since Plaintiffs have made no allegation that State Farm "made any express decision not to rely on the suit limitation clause," or "committed any affirmative act to mislead or prejudice Plaintiffs prior to the expiration of the one-year limitation period."  *Costello*, 2024 WL 1520567, at *4.

    *d. Whether the Policy's one-year limitation of suit provision is unconscionable*

   Fourth, Plaintiffs ask the Court to find that, to the extent the one-year Suit Against Us provision prevents them from seeking enforcement of the Policy's appraisal clause, that provision is unconscionable and therefore unenforceable.  *See, e.g., Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264-70 (3d Cir. 2003) (discussing the doctrine of unconscionability, which involves both "procedural" and "substantive" elements).  Based on the facts alleged in the Complaint, the Court does not find this to be so.  Even if the Court were to find that, under the facts alleged, the Suit Against Us provision meets the procedural prong of unconscionability (which pertains to the process by which an agreement is reached and the form of an agreement, including the use of fine print and convoluted or unclear language), Plaintiffs have not alleged facts to show that such provision is substantively unconscionable (which involves terms that unreasonably favor one party, and to which the disfavored party does not truly assent).  *See id.* at 265-67 (a case cited by Plaintiffs, in which the Third Circuit found that an arbitration clause that provided only 30 days for an employee to bring a claim against an employer was unreasonable and met the requirement for substantive unconscionability).

   Moreover, as State Farm points out, courts are routinely asked to apply one-year suit

limitations clauses in Pennsylvania insurance policies.  Furthermore, as indicated, *supra*, courts in this district as well as in other districts, applying Pennsylvania law, have found one-year Suit Against Us provisions contained within State Farm's Homeowner's Policies to be enforceable. *See Gowton*, 2016 WL 3539138, at \*2; *Palmisano*, 2012 WL 3595276, at \*11; *Yatsonsky v. State Farm Fire & Cas. Co.*, No. 3:15cv1777, 2016 WL 1660863, at \*2-4 (M.D. Pa. Apr. 27, 2016); *Conway v. State Farm Fire & Cas. Co.*, No. CIV. A. 98-6295, 1999 WL 545009, at \*2-3 (E.D. Pa. July 27, 1999).  Therefore, the Court does not find that enforcing the one-year Suit Against Us provision in this case would be unconscionable.

### e.   Appraisal as a remedy for the statutory bad faith claim

Last, Plaintiffs assert that, regardless of their other claims, their statutory bad faith claim at Count II, brought pursuant to 42 Pa. Cons. Stat. § 8371, provides an independent means of enforcing the appraisal process requested at Count I.  Plaintiffs note that State Farm has not moved to dismiss their bad faith claim (to the extent it is alleged against State Farm), so that claim survives State Farm's motion to dismiss and Plaintiffs will be able to seek appraisal under a separate statutory enforcement provision.  Plaintiffs do not address this issue further in their brief, however, nor does State Farm address the issue of appraisal in the context of Plaintiffs' statutory bad faith claim, since State Farm has not moved to dismiss that claim.  Accordingly, the Court finds that it would be premature to make a determination as to whether compelling participation in an appraisal process is an appropriate remedy for Plaintiffs' bad faith claim at Count II.  *See, e.g., Costello*, 2024 WL 1520567, at \*5-6 (dismissing the insured plaintiffs' breach of contract claim and petition to compel appraisal as time-barred under their insurance policy, but allowing the insured plaintiffs' bad faith claim to proceed where they alleged that defendant State Farm had refused to engage in the appraisal process after that policy's one-year limitation of suit provision had expired).

*f.  Counts I and III summary*

Upon consideration of the parties' arguments regarding Counts I and III of the Complaint, the Court finds that Plaintiffs' breach of contract claim at Count III is barred by the Policy's one-year Suit Against Us provision, and that claim will be dismissed.  Because Plaintiffs' specific performance request at Count I arises from, and seeks enforcement of, Plaintiffs' rights under the Policy and also appears to be a remedy tied to their breach of contract claim, claims that are time-barred by the Policy's Suit Against Us provision, Count I will be dismissed as well.  As allowing amendment of these time-barred claims would be futile, the dismissal of these claims will be with prejudice.  *See Shane v. Fauver*, 213 F.3d at 115.

## V.  <u>CONCLUSION</u>

For the reasons stated, Plaintiffs' Motion to Remand will be denied, State Farm's Motion to Dismiss will be granted, and Plaintiffs' claims at Count I (Specific Performance), Count II (Statutory Bad Faith, against Ortman alone), Count III (Breach of Contract), and Count IV (Tortious Interference) will be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The dismissal of such claims will be with prejudice, as amendment would be futile.

An appropriate Order follows.


Dated:  November 19, 2025                    *s/ W. Scott Hardy*
                                             W. Scott Hardy
                                             United States District Judge

cc/ecf:  All counsel of record